# SALEM NISI PRIUS.

## JUNE TERM, 1795.

### WOOD v. EXECUTORS OF GILL.

1. Where a daughter of full age leaves the house of her father, he is not bound to pay for her board, and provide clothes for her in the house of another, without an express promise, or some act from which a promise might be inferred.

Wood v. Executors of Gill.

2. Proof that a father said to a third person that he intended to pay for the board of his daughter of full age, does not amount to an express promise to pay, but it is a fact from which the jury may perhaps infer a previous promise.

This was an action *indebitatus assumpsit* brought by Wood to recover from the executors of Matthew Gill, deceased, the sum of £1000 for the boarding, lodging and clothing of Mary the daughter of the testator, which the declaration stated had been provided at his special instance and request.

The defendants pleaded the general issue, and the cause came on to be tried in June, 1795, at the Salem Nisi Prius, before KINSEY, C. J.

A variety of testimony was brought forward, from which it appeared, that the daughter of the testator was of full age, that she had gone to live with the plaintiff without her father's acquiescence, and had remained with him fourteen years, and was during this period clothed, lodged and boarded by him. The testimony of the different witnesses varied much upon one point, whether she lived as a boarder at Wood's or whether she performed any of the house work. There was no pretense of any express contract between the parties, but two of the witnesses for the plaintiff swore that the testator had said in their presence, that his daughter lived well at Wood's and that he would pay him well, or satisfy him for it.

*R. Stockton* and *Griffith*, for plaintiff, cited 1 *Com. Dig.* 184, *A* 1; 2 *Bl. Com.* 442–3, &c.; *Cowp.* 290.

*Leake, Pearce* and *Lawrence*, for defendant, cited 1 *Esp. Dig.* 87; 2 *Str.* 728; 1 *Bl. Com.* 448–9.

KINSEY, C. J., charged the jury.

The action which you are to determine is an action similar in its nature to an action of debt, and is brought to recover the amount claimed by the plaintiff for boarding and

clo-[450]-thing the daughter of the testator from the year 1773, till sometime in the year 1787. The amount demanded is £1000.

The defendants have pleaded the general issue, denying the whole demand, and the question for your determination is reduced to this simple form—whether the estate of Gill is indebted to the plaintiff, and if so, to what amount?

Actions of this nature are founded upon express promises of payment, or upon implied promises. An implied promise is that which may be legally inferred by the jury from circumstances, and it is equally obligatory in conscience and in law, with that which has been clothed in words. A familiar instance will render this doctrine perfectly intelligible: a man sends to a shop for a pound of sugar, which is obtained by him; here, although there was no express or actual promise that he would pay the price of the commodity which he has received, the law supposes, and for reasons too obvious to require illustration, he undertook to satisfy the seller the full value of the article. Upon the same principle, in almost every case where a man is bound by the ties of natural justice and equity to pay a particular sum, the law raises a promise to do it, and will compel its performance.

From the evidence which you have heard in this case, it appears, and this fact is not questioned, that Mary Gill, the daughter of the testator, did actually reside in the family of Wood, for a considerable length of time. In what capacity she lived there, is not so clear, there being much variance in the testimony of the different witnesses, some saying she lived there boarding as a lady, others that she earned her living by her services in the house, by her attention to and care of the family. This point it is your duty to settle; it is of considerable importance in the case, and will serve to explain the whole transaction between the parties; for, if the plaintiff undertook to board and provide for this female, with the consent, or at the request of the father, with the understanding, at the time, that he was to be recompensed by the father for what he did, or that the testator made any actual

Wood v. Executors of Gill.

promise of compensation, or did any act which would fully and clearly imply a promise, or one from the whole circumstances of which it appears that by the ties of natural justice he [451] ought to pay it, he was liable, and his executors are now bound to pay.

As the daughter was of full age, and voluntarily departed from her father's roof, he is not by law bound to pay for her board and clothing in the house of another, unless he expressly promised so to do, or unless he did some act which implies a promise that he would pay. Slight circumstances are not sufficient to warrant you in inferring a promise. I think the plaintiff is bound to make it appear clearly to the jury that he took this girl to his house with a prospect and with the understanding that he was to be compensated; that she went with the consent of the father, and that the father did expressly or impliedly undertake to pay these necessary expenses. This proof should be clear and explicit, and the circumstances of this case prove, if proof was necessary, the wisdom and propriety of the rule; for if slight presumptions should be deemed sufficient to impose such a burthen upon a father, a man might be ruined by enormous bills of this description, which he never had any expectation would be brought up against him, and which, in justice, he is under no obligation to pay.

Let us, then, examine the testimony, and see how far it supports the allegation of an express or implied promise. The only circumstance which appears to me to bear powerfully upon this point, is what has been stated by two of the plaintiff's witnesses, that Gill, in a conversation which took place in their hearing, in answer to the question what charge Wood had made, replied he did not know; they had not settled; but added, "he intended, or was to make satisfaction for her being at Wood's, for she lived well there." This is vague language, and may mean that, deducting all equitable allowances, he would make a fair compensation; or that, in consequence of the kind treatment which his daughter had met with, he felt himself called upon to make Wood some

remuneration. The language is too vague to warrant, of itself, any certain inference as to its meaning. At any rate, it was made to a third person, and after the daughter had been some time with Wood after the consideration was past and executed; and it cannot, therefore, be regarded as an assumption [452] binding in law, or sufficient to support an action. It appears to me of more weight as furnishing evidence to show that he had previously assumed to pay the debt; but whether it is of itself, or in connection with the other circumstances of the case, sufficient to authorize such an inference, you, and not the court, are the proper judges.

The case seems to turn altogether upon questions of fact, which you will determine, and apply to them the observations which have fallen from the court. If you think, from the whole case, that Mary Gill went to the plaintiff's house to live and be provided for, at the expense of the father, and with his concurrence, the plaintiff ought to recover. If you think the circumstances will not bear this construction, that there was neither an express nor implied promise to pay for her maintenance, or that she earned her support by her labor and services in the family—in either of these cases, I think, your verdict should be for the defendant.

Verdict for plaintiff, £150, and 6d. costs.

The jury were polled, and they all agreed in the verdict.